### UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE; ██████████ and ██████████<br><br>Plaintiffs,<br><br>v.<br><br>RIVERDALE COUNTRY SCHOOL;<br>RANDOLPH, DOMINIC A.A., Head of School;<br>NICHOLSON-FLYNN, Kelley, Head of Upper<br>School; CHOI, JULIE, Deans of Students,<br>████ TORRES, MIGUEL, Middle<br>School/Upper School Counselor; OWENS,<br>MICHELE, Clinical Psychologist; and JANE DOE<br><br>Defendants. | Case No.: 17 cv-09537<br><br><br>COMPLAINT<br><br><br><br>JURY DEMANDED |

COME NOW Plaintiffs John Doe, ████████████████████████ for their

Complaint against the Defendants allege as follows:

### PRELIMINARY STATEMENT

1. Plaintiffs seek redress against Defendants, Riverdale Country School, Randolph A.A.
   Dominic, Kelley Nicholson-Flynn, Julie Choi, Miguel Torres, Michele Owens, and Jane
   Doe due to false and malicious allegations of ████████ they made against Plaintiff
   John Doe. Defendants acted in concert, jointly and severally, and individually to fabricate
   and advance these wholly false allegations against Plaintiff John Doe. Defendants
   accused Plaintiff John Doe of ████████ Defendant Jane Doe, despite having
   evidence, in the form of a New York Police Department ("NYPD") police report, that the
   allegations against Plaintiff John Doe were baseless. Defendants purposely and

maliciously proceeded to wrongfully expel Plaintiff John Doe on the basis of the above-referenced false allegations, despite the fact that Defendant Jane Doe herself provided a signed statement to the NYPD stating that ████████████████████████ ████████████████████████████████████████ ████████████████████████ Ex., E. Defendants violated Plaintiff John Doe's statutorily and constitutionally protected civil rights by discriminating against him based on his gender and ethnicity and failing to provide him due process pursuant to Riverdale Country School's policies and procedures. Defendants' actions, omissions, errors, flawed procedures, and/or negligence resulted in an arbitrary and capricious decision to expel Plaintiff John Doe from Riverdale Country School.

2. Plaintiff John Doe is ██████ at Riverdale Country School. He is a great student who is actively involved on campus. Defendant Jane Doe is ████████ at Riverdale Country School. ████████████████████████████████ ████████████████████████████████████ ████████████████████████████ ████████████████████████████████████ ████████████████████████████ ████████████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████ ████████████████████████████████████ ████████████████████████████

3. Defendant Michele Owens is a very successful, licensed, clinical psychologist in New York City. Defendant Owens is on the board for Early Steps, a well-known not-for-profit organization that works with all the New York City private schools. Defendant Owens is also a senior psychologist for Prep for Prep, another powerful not-for-profit organization in New York City that also works with all the New York City private schools. ████████ ███████████████████████████████████████████████ ████████████████████████████████████ On or about October 2017, Defendant Owens contacted Defendant Riverdale Country School and informed the school that Defendant Jane Doe had allegedly disclosed that Plaintiff John Doe had ████████████ Defendant Jane Doe. Given Defendant Owens high powerful position in the private school community, Defendant Riverdale Country School and its employees exclusively relied on her report and acted swiftly without conducting a proper inquiry into the false allegations.

4. Defendants Riverdale Country School referred the matter to the NYPD. The NYPD conducted a full investigation into the allegations, including interviewing Defendant Jane Doe. In her interview with the NYPD, Defendant Jane Doe stated on the record that Plaintiff John Doe ███████████████████████████ *See Withdrawal* ██ ███████████████ Ex. C. The NYPD's investigation concluded with the finding that the allegations against Plaintiff John Doe were baseless. The NYPD forwarded their findings to Defendant Riverdale Country School and closed the case.

5. Rather than close the school's case, much like the NYPD did because the allegations against Plaintiff John Doe were baseless, Defendant Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres jointly and

severally and maliciously proceeded to expel Plaintiff John Doe for the false allegations. They stood by this false claim despite Defendant Jane Doe's statements that Plaintiff John Doe ███████████████████████ Defendants Riverdale Country School, and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres provided no evidence to back up the already proven false allegations.

6. Plaintiff John Doe submitted additional evidence to Defendant Riverdale Country School and its employee, Defendant Randolph which further refuted allegations of sexual harassment already confirmed to be false by Defendant Jane Doe. Moreover, Plaintiff John Doe submitted evidence demonstrating that Defendant Jane Doe had previously engaged in sexual harassment against him.

7. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres ignored the overwhelming evidence in the record and made an arbitrary and capricious decision to expel Plaintiff John Doe.

8. Plaintiffs bring this action to seek this Honorable Court to respectfully order Defendant Riverdale Country School to reinstate Plaintiff John Doe at Riverdale Country School because the decision to expel him was arbitrary and capricious and violates New York CPLR Article 78. Plaintiffs also seek injunctive and punitive relief due to Defendants violations of Plaintiff John Doe's statutorily and constitutionally protected rights under, but not limited to, Title IX, 42 U.S. Code § 1983, New York Executive Law Section 296(4), and New York Civil Rights Law Section 40-C to be free from discrimination based on gender and ethnicity. Plaintiffs additionally bring this action because Defendants actions amounted to breach of contract, violation of the covenant of good faith and fair dealings, deceptive trade practices, negligence and several other tortious

claims. Plaintiffs seek monetary relief, compensatory and punitive damages, attorneys'

fees, disbursements, costs and fees, and any other relief as this Honorable Court deems

equitable and just.

## JURISDICTION AND VENUE

9.  This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because: the parties are

diverse and the amount in controversy well exceeds $75,000, exclusive of costs and

interest.

10. Venus is proper pursuant to 28 U.S.C. § 1391 because all Defendants reside in this

judicial district. Riverdale Country School is located in the Riverdale section of the

Bronx, New York and conducts all of its business within the State of New York. All of

the events or omissions giving rise to the claims occurred in this judicial district.

## PARTIES

11. Plaintiff John Doe is ▮▮▮▮▮▮▮▮▮▮▮ at Riverdale Country School. Plaintiff

John Doe's is a great student, and he has never had any disciplinary issues at school prior

to the false allegations of ▮▮▮▮▮▮ that Defendants brought against him. Plaintiff

John Doe has maintained such a good record at Riverdale Country School that the school

acknowledged his good standing in their first letter to expel Plaintiff John Doe.

12. Plaintiff ▮▮▮▮▮▮ and Plaintiff ▮▮▮▮▮▮▮▮▮ are the mother and

father of Plaintiff John Doe. Plaintiffs ▮▮▮▮▮▮▮ are divorced but co-

parent Plaintiff John Doe. Plaintiff John Doe lives with his mother, Plaintiff ▮▮▮▮ in

New York City during school periods but lives with his father in ▮▮▮▮ during winter,

spring and summer break from school. Plaintiffs ██████████████ both contribute

financially to Plaintiff John Doe's education and are obligated by contract with

Defendant Riverdale Country School.

13. Defendant Riverdale Country School is an elite co-educational college-preparatory

school in New York City. Riverdale Country School offers its students a unique

curriculum and issues grades on a yearly basis.  It is located in the Riverdale section of

the Bronx, New York. Riverdale Country School is accredited by the New York State

Association of Independent Schools ("NYSAIS").

14. Defendant Dominic A.A. Randolph is the Head of School for Riverdale Country School.

15. Defendant Kelley Nicholson-Flynn is the Head of the Upper School for Riverdale

Country School.

16. Defendant Julie Choi is the Dean of Students ██████████ for Riverdale Country School.

17. Defendant Miguel Torres is Middle School and Upper School Counselor for Riverdale

Country School.

18. Defendant Michele Owens is a highly successful private, licensed clinical psychologist in

New York City. Defendant Owens is on the board for Early Steps, a powerful not-for-

profit organization that works with all New York City private schools. Defendant Owens

is also a senior psychologist for Prep for Prep, another powerful not-for-profit

organization in New York City working exclusively with private schools.  Defendant

Owens has a strong professional ties with the top New York City private schools

including, Riverdale Country School. ████████████████████████████

████████

19. Defendant Jane Doe is ████████████████████ at Riverdale Country School.

Defendant Jane Doe receives averages grades ███████████████████████

████████████████████████████████████████████████████████

██████████████

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

I. **Relevant Background Information of Riverdale Country School**

20. Defendant Riverdale Country School is an elite private educational institution focused on preparing its students for enrollment into the nation's top ranked universities. The present day institution traces its origins to the Riverdale School for Boys, which was established in 1907 by Frank Hackett. In 1933 the Riverdale Girls School was founded. In 1972, the schools were combined to form a single school.

21. Defendant Riverdale Country School is currently ranked number 28 on the list of Best Private High Schools in America. *See* Ex. MM

22. Defendant Riverdale Country School is one of the most expensive private educational institution in New York City with the collective cost of tuition and ancillary academic fees totaling $52,050 for the academic year of 2017-2018.

23. Defendant Riverdale Country School's high tuition cost yields numerous benefits for parents and students. Defendant Riverdale Country School offers small class sizes, including a student to faculty ratio of 5:1, unique curriculum (*See* Ex. KK), and 80% of the faculty hold advanced degrees.

24. Defendant Riverdale Country School boasts an impressive alumni record and a powerful list of successful individuals on the board of trustees. Defendant Riverdale Country School's notable alumni and affiliates contribute to the school's $63.3 million

endowment.

25. Students who graduate from Riverdale Country School most commonly attend top colleges and universities including, Ivy Leagues such as: Cornell University, University of Pennsylvania, Columbia University, and Dartmouth College.

## II.   Non-Profit Status and Government Funding

26. Defendant Riverdale Country School is a charitable, not-for-profit 501(c) 3, tax-exempt organization. *See* Ex. RR.

27. Because of its not-for-profit status, Defendant Riverdale Country School enjoys tax exemptions from local, state, and federal governments.

28. Furthermore, Defendant Riverdale Country School's not-for-profit status permits it to receive tax exemptions. Defendant Riverdale Country School has received bond interest tax exemptions amounting to more than $800,000.  *See* Ex. QQ.

29. Defendant Riverdale Country School has received federal grants to implement academic projects such as language programs. *See* Ex. PP.

30. In 2014, Riverdale Country School received $580,000 in government grants. *See* Ex. OO.

## III.   History of the Relationship Between Plaintiff John Doe and Defendant Jane Doe

31. ███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████

32. ███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████

33. ███████████████████████████████████
██████████████████████████████████████████
█████████████████████████████████████████
██████████████

34. ████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████
███████████████████████████

35. ██████████████████████████████████████
█████████████████████████████████████████

36. ████████████████████████████████████████
██████████████████

37. ████████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████████
██████████████████████





43.

44.

45.

46.

47.

48. 

49.

50.

51.

52.

53.

54.

55.

56. ████████████████████████████████████████████████████

████████████████████████████████████

57. Within the same week Plaintiff John Doe found himself charged with horrific accusations of ███████████ which were allegedly never even made by Defendant Jane Doe, but Defendants Riverdale Country School and Defendants Randolph, Nicholson-Flynn, Choi, Torres, as well as Defendant Owens made the false allegation of ███████████ against Plaintiff John Doe which ultimately led to his unjust and improper expulsion from Riverdale Country School.

## IV.    Improper and Unlawful School Action

58. On or about October 27, 2017, Plaintiff John Doe was removed from his class by Defendant Choi and escorted to Riverdale Country School's administrative office stripped of his phone over his protest, was told he could not call or speak to anyone, and was held in the nurse's office.

59. Plaintiff ███████ was also called into school and a meeting was held with her son, Milton J. Sipp (Assistant Head of School) and Defendants Choi, Nicholson-Flynn.

60. The only information that Mr. Sipp and Defendants Choi, Nicholson-Flynn disclosed to Plaintiff ███████ and Plaintiff John Doe was that Defendant Jane Doe made serious allegations against Plaintiff John Doe and the school would report it to the New York Police Department and New York City Administration for Children's Services, but no specific allegations were given.

61. Mr. Sipp and Defendants Nicholson-Flynn and Choi stated that Plaintiff John Doe was being removed from school for "protection purposes" until the allegations made by

Defendant Jane Doe could be fully investigated. This was allegedly not only to protect the complainant.

62. Plaintiff John Doe was told that he would have full access to homework, teachers, and daily school work until the matter was resolved.

63. Defendant Miguel Torres reported to the NYPD: ████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

████████ *See* ████████████████ Ex. A.

64. Defendant Owens reported to the NYPD: ████████████████████

████████████████████████████████████████████

████████ *See* ████████████████ Ex. B.

65. The NYPD opened up an investigation on the matter and a detective reached out to Plaintiff ████████ on or about October 28, 2017 and informed her that Plaintiff John Doe had been accused of ████████████████

66. On or about November 3, 2017, Defendant Randolph called Plaintiff ████████ and informed her that according to his contacts, the NYPD investigation had concluded that the allegations against Plaintiff John Doe were unfounded.

67. Plaintiff ████████ contacted the detective investigating the matter and he informed her

that when the NYPD interviewed Defendant Jane Doe, she stated on the record that ███

████████████████████████████████████████████████████████

████████████████████

68. On or about November 6, 2017, Defendants Randolph, Nicholson-Flynn, Choi invited

Plaintiff ██████ and Plaintiff John Doe to a meeting at Riverdale Country School.

Defendants Randolph, Nicholson-Flynn, and Choi led Plaintiff ██████ and Plaintiff

John Doe to believe that the meeting was a "safe space" to discuss and understand the

extent of Plaintiff John Doe and Defendant Jane Doe's relationship.

69. On the contrary, the discussion was an interrogation of Plaintiff John Doe by Defendants

Randolph, Nicholson-Flynn, and Choi. Rather than accept the fact that the NYPD

concluded that the allegations against Plaintiff John Doe were baseless, Defendants

Randolph, Nicholson-Flynn, and Choi accused Plaintiff John Doe of the same ██ alleged

incidents of sexual harassment against Defendant Jane Doe, but ████████████████

████████████████████████████ saying they were not addressing that

anymore.

70. Plaintiff John Doe told Defendants Randolph, Nicholson-Flynn, and Choi that he did not

remember specifically doing the ██ alleged incidents. Some of the conduct seemed like

behavior Plaintiff John Doe would engage in but he could not definitely say he did or did

not participate in that conduct on the specific time and place that Defendants Randolph,

Nicholson-Flynn and Choi were asking about, and certainly not in the manor they

described. In other words, he might have engaged in that type of conduct but he wasn't

sure if he engaged in it on the specific days and times they were asking about. In regards

to some of the other incidents Defendants Randolph, Nicholson-Flynn and Choi asked

Plaintiff John Doe about, he flatly denied them saying it's not the type of conduct he would participate in.

71. Three individual meetings took place that day between the parties.

72. The first meeting was with Defendants Randolph, Nicholson-Flynn, Choi and Plaintiffs ███████ and John Doe. Defendants Randolph, Nicholson-Flynn, and Choi told Plaintiff ███████ that the school would not examine



73. Instead, Defendants Randolph, Nicholson-Flynn, and Choi were focused on interrogating Plaintiff John Doe about the conduct of  Fall 2017 allegations of sexual harassment they alleged he committed against Defendant Jane Doe, regardless of her statement otherwise to the NYPD that it was untrue.

74.  These allegations consisted of



75. Plaintiff John Doe stated he could not remember specific incidents or times Defendant Randolph, Nicholson-Flynn, and Choi ask about, but some of the conduct they asked about Plaintiff John Doe did participate in consensually with Defendant Jane Doe. In regards to the other allegations, Plaintiff John Doe flatly denied them, stating that it's not conduct that he would engage in.

76. The discussion ensued into the cultural norms of ███████████████ Defendant Nicholson-Flynn was extremely upset and made a point to say that this wasn't the culture ███████████ Defendant Nicholson-Flynn took an aggressive tone and made it very clear, that ███████████████████████

16

████████████████████████

77. Defendant Riverdale Country School's Family Handbook states: "Individuals involved in physical intimacy may not continue unless they have received affirmative consent. Affirmative consent is knowing, voluntary and mutual decision among all participants to engage in sexual activity. Consent can be given by words or actions, as long as those words or actions create clear permission regarding willingness to engage in the sexual activity." *See Riverdale Country School Family Handbook 2017-2018 at 16*, Ex. GG.

78. Plaintiff John Doe had both forms of consent, words and actions, prior to and at the time of the alleged incidents and that Defendant Jane Doe had never revoked consent with him regarding their interactions ██████████████████

79. Defendant Nicholson-Flynn deviated from Defendant Riverdale Country School's policies and procedures on consent and implemented her own views.

80. However, in the present matter, Plaintiff John Doe always had consent from Defendant Jane Doe in their interactions. It was improper for Defendant Nicholson-Flynn to implement her own policy on Plaintiff John Doe and then accuse him of violating rules of consent, especially since he made it very clear that he always had consent from Defendant Jane Doe when interacting with her in any way.

81. After the first meeting was over, Plaintiff John Doe was very upset and crying and Defendant Choi took him to her office in which she held a private meeting with him without his mother, Plaintiff ████████

82. Defendant Choi told Plaintiff John Doe that Defendants Randolph and Nicholson-Flynn were not convinced of the "stuff he said in there." Defendant Choi made anecdotes such as "If I spill paint in someone's driveway it's obvious, I did it. I would remember I did it,

███████████████████████████████████████████

Defendant Choi told Plaintiff John Doe if he did not go back in there and "admit you did those things, the worst outcome will happen to you." She implied several times that if Plaintiff John Doe did not admit to the conduct then he would be expelled.

83. Plaintiff John Doe was crying and confused as to why Defendant Choi was adamant about having him admit to the conduct. Plaintiff John Doe knew the allegations could not have come from Defendant Jane Doe because he always received consent before interacting with her in any way.

84. While the specific details and of the events presented to Plaintiff John Doe by Defendants Randolph, Nicholson-Flynn, and Choi did not match what he remembered, he knew that him and Defendant Jane Doe played around often but it was always consensual. ████

███████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████

85. Plaintiff John Doe clearly articulated to Defendants Randolph, Nicholson-Flynn, and Choi that the ████████████████████████████ Defendants Randolph, Nicholson-Flynn, and Choi told Plaintiff John Doe that Defendant Jane Doe did not want to ██████████████████████ Plaintiff John Doe flatly denied it and offered to show recent text messages from Defendant Jane Doe showing her continued consent █ ██████████████████

86. Defendants Randolph, Nicholson-Flynn, and Choi took this out of context. Plaintiff John Doe had admitted that some of the conduct they described happened but he was very

clear that it was consensual ███████████████████████ However, Defendants

Randolph, Nicholson-Flynn, and Choi misconstrued his reply and took it to mean that he

was admitting to ████████████████ sexual harassment, which he was not.

87. Plaintiff John Doe was very clear that he never sexually harassed Defendant Jane Doe

and denied the allegations Defendants Randolph, Nicholson-Flynn, and Choi made

against him. Plaintiff John Doe maintained that he always had consent from Defendant

Jane Doe █████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████

## V.     Failure to Follow Riverdale Country School's Outlined Policies

88. Riverdale Country School outlines its policies and procedures for dealing with allegations

of sexual harassment in the Riverdale Country School Family Handbook 2017-2018

("Handbook"). *See* Ex. GG. The Handbook declares:

> "The School is committed to taking all reasonable measures promptly to prevent
>
> and correct harassing/bullying behavior. Upon receipt of any complaint of
>
> harassment/bullying, the School will promptly investigate the complaint. The
>
> investigation may include interview of the complainant, the alleged offender, and
>
> others. It may also include other methods, such as utilizing outside counsel or an
>
> independently appointed investigation firm. In addition, other investigative
>
> measures including but not limited to, viewing emails, text messages,
>
> photographs, and social media pages or apps may be employed. The School will
>
> try to be as discreet as possible during an investigation and confidentiality will be

maintained to the extent possible given the facts and circumstances of the complaint and the need to do a fair and thorough investigation. The School, however, has a legal obligation to act on all information it receives if it believes an individual may be engaging in wrongful conduct or violating the law." *See Handbook 2017-2018* at 17.

89. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, and Choi failed to follow the policies and procedures for investigating allegations of harassment outline in the Handbook.

90. Defendant Riverdale School and its employees, Defendant Randolph, Nicholson-Flynn, and Choi did not conduct an initial investigation on the matter. Rather, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, and Choi called Plaintiff ▮▮▮▮▮ and John Doe into the school's office and informed them that Plaintiff John Doe would be removed from school while withholding any and all relevant details as to why Plaintiff John Doe was being removed from school.

91. By not disclosing any pertinent facts or details relating to the allegations against Plaintiff John Doe, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, and Choi wrongfully deprived Plaintiffs of their due process right to adequately respond to the allegations.

92. Defendant Randolph was aware of the NYPD's findings that the allegations against Plaintiff John Doe were baseless.

93. Pursuant to the Handbook, Defendant Riverdale Country School and its employees were required to give weight to the findings made by the NYPD.

94. After the NYPD concluded that Plaintiff John Doe did not ▮▮▮▮▮▮▮▮▮ Defendant

Jane Doe, Defendant Randolph should have immediately reinstated Defendant Jane

Doe's right to attend school, apologize to him, and discipline any and all individuals that

were involved in fabricating the allegation against Plaintiff John Doe pursuant to the

Handbook.

95. The Handbook is clear on disciplinary measures taken against individuals who make false

allegations of harassment stating:

> "The School recognizes that false accusations of harassment can cause serious
>
> harm to innocent persons. If an investigation results in a finding that the
>
> complainant knowingly or maliciously accused another person falsely of
>
> harassment/bullying, the complainant will be subject to disciplinary action"
>
> *Handbook* at 19.

96. Instead of closing the case against Plaintiff John Doe, much like the NYPD did due to the

fact that the allegations were baseless, Defendant Riverdale Country School and its

employees, Defendants Randolph, Nicholson-Flynn, and Choi continued to act on the

fabricated allegations against Plaintiff John Doe and further prosecuted him.

97. In the meeting on November 6, 2017, Defendants Randolph, Nicholson-Flynn, and Choi

told Plaintiff John Doe that Defendant Jane Doe was not comfortable with playing or

joking around with him and that she had requested that he stop.

98. Plaintiff John Doe offered to show Defendant's Randolph, Nicholson-Flynn, and Choi

text messages he had showing that Defendants Jane Doe and him had an amicable

relationship as recent as a couple days leading up to the day Defendant Riverdale Country

School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres

removed him from school.

99. Per the Handbook, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres were obligated to review any and all relevant text messages between Plaintiff John Doe and Defendant Jane Doe in investigating the allegations.

100. However, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres purposely and/or negligently ignored Riverdale Country School's Family Handbook on investigations of harassment and conducted a kangaroo court over the fabricated allegations against Plaintiff John Doe.

## VI.    Failure to Accept Law Enforcement and Judiciary Findings

101. After Defendant Riverdale Country School notified NYPD of the allegations made against Plaintiff John Doe, the NYPD opened up an investigation on the matter on or about October 28, 2017.

102. Defendant Jane Doe was interviewed by the NYPD and questioned about the allegations against Plaintiff John Doe.

103. On or about October 28, 2017, Defendant Jane Doe voluntarily completed a ██████████ ████████████████████████████ stating:

██████████████████████████████████████

██████████████████████████████████

███████████████████████

104.  Upon concluding the investigation the detective completed a police report which stated:

██████████████████████████████████████

████████████████████████████████



105.  This police report conclusively proved that not only were the allegations against

Plaintiff John Doe baseless, but it was completely and utterly fabricated by the

Defendants.

106. Upon receiving the police report, Defendant Randolph was obligated to: (1) reinstate

Plaintiff John Doe back into Riverdale Country School; (2) provide a formal apology to

Plaintiffs; and (3) conduct an investigation into who initiated the fabricated allegations

against Plaintiff John Doe pursuant to the Handbook.

107. Instead, Defendant Randolph in collusion with Defendants Nicholson-Flynn, Choi, and

Torres circumvented the Handbook and rejected the NYPD's findings and further

prosecuted Plaintiff John Doe by expelling him for the fabricated allegations against him.

108.  On or about November 22, 2017, Plaintiff John Doe

109. On the same day, based on the text messages, the same ones Defendant Riverdale

Country School refused to reviewed, and statements by Plaintiff John Doe,

███████████████████████████████████████████████

110. Defendant Riverdale Country School continues to fail to recognize that not only has the NYPD found all the allegations false against Plaintiff John Doe to be false, but also the ████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Exs. D, I.

## VII. Failure to Accept Evidence and Properly Investigate or Speak to John Doe's Witnesses

111. Pursuant to the Handbook, Riverdale Country School may interview "the complainant, the alleged offender, and **others**." *Handbook* at 17.

112. After Defendants Randolph, Nicholson-Flynn, and Choi notified Plaintiffs ██████ and John Doe that he would be dismissed from Riverdale Country School, Plaintiff John Doe's friends and fellow students as well as parents who had knowledge of the nature of the relationship between Plaintiff John Doe and Defendant Jane Doe wrote letters to Defendant Randolph. *See* Exs. U-CC

113. Counsel for Plaintiffs sent to Defendant Randolph the parent and student letters in support of Plaintiff John Doe as well as evidence consisting of ███████████████ ████████████████████████████████████████████████████████ ██████████████████████ proof that is was actually Defendant Jane Doe that harassed Plaintiff John Doe.

114. Defendant Randolph indicated that he would review the additional above-referenced evidence submitted by Plaintiffs' counsel and forward the matter completely to counsel for Riverdale Country School.

115. When Plaintiff's counsel, spoke to Defendant's counsel he refused to look at the evidence submitted and requested additional evidence specifically from the fall of 2017 from Plaintiff John Doe.

116. Thereafter, Plaintiffs' counsel submitted a nineteen page letter and a thirty-four page evidence package which: (1) provided ample evidence proving the allegations against Plaintiff John Doe were baseless fabrications; (2) demonstrated that Defendant Jane Doe was in fact the person guilty of sexual harassment; and (3) called for the immediate reinstatement of Plaintiff John Doe back into Riverdale Country School.

117. Within hours of receiving the nineteen page letter and evidence package, Defendants' counsel sent Plaintiffs' counsel a one-page letter claiming that Plaintiffs' counsel did not send relevant communications from the semester between Defendant Jane Doe and Plaintiff John Doe, a completely untrue statement by Defendants' counsel. *See* Ex. FF.

118. Defendants' counsel also stated that Plaintiffs' counsel's evidence package contained ███████████████████████████████████████████████████████████

119. It was apparent that Defendants' counsel had not reviewed the evidence package closely because if he did, Defendant's counsel would have realized that ███████████ ███████████████████████████████████████

120. The failure of Defendants' counsel to properly evaluate the pertinent evidence regarding the false allegations against Plaintiff John Doe is imputed onto Defendants given that Defendants' counsel was operating as the investigative body for Defendants.

## VIII.    Gender Bias and Discrimination at Riverdale Country School

121. Defendant Riverdale Country School regularly and routinely upholds sexist and

patriarchal gender roles and traditional values. These values stems back to the school's founding as it was an all-boys school for the first two decades of its establishment. When Riverdale Country School finally established a girls school two decades after the boys school, it kept the two schools separate. Riverdale Country School only integrated the girls' schools into the boy's school in 1972, more than six decades after its establishment.

122. Although Defendant Riverdale Country School presents itself as a modern, progressive thinking educational institution, its archaic gender normative ethos is pervasive throughout the entire school, including the faculty's teaching techniques, the school's athletic programs, and manner in which the administration disciplines boys and girls.

123. Given the Defendant Riverdale Country School's archaic approach to gender norms, Defendants Randolph, Nicholson-Flynn, Choi, and Torres immediately labeled Plaintiff John Doe as the offender before even reviewing a shred of evidence

124. Defendant Riverdale Country School and its employees assign male students the role of instigator and pigeonhole female students as passive participants in any and all sexual activity. This ideology asserts that women can have no active role in their own sexual experiences, and must always be acted upon instead of with.

125. This outlook of upholding traditional gender roles is especially acute in the school's athletic department.

126. Each year, student athletes are given a survey at the end of each sports season covering a multitude of criteria aimed at improving the sports programs. This year, surveys completed by the female athletes cited displeasure with what they felt were discriminatory practices at the hands of the school, the athletic department, at the direction and leadership of Athletic Director John Pizi.

127.  Female student-athletes at Riverdale Country School stated that in comparison to their male counterparts they suffer from a lack of proper equipment, poor maintenance of the fields, diminished practice time, inadequate support from staff, and a low emphasis on college recruiting instruction and guidance.

128. Female student-athletes cited that male teams, in contrast were given not only adequate, but new equipment in abundance. Coaches were brought in for specific positions and skills training for male athletes.

129. The boy's teams were provided with new uniforms, while girl's teams were given old, mismatched, or ill-fitting uniforms. One female varsity team was given ill-fitting see through shorts to compete in.

130. This entrenchment in traditional gender roles at Defendant Riverdale Country School has been made very plain by the egregious mishandling of Plaintiff John Doe and Defendant Jane Doe's ███████████████████ Defendant Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, Torres discriminated against Plaintiff John Doe on the basis of his gender and ethnicity and reached an arbitrary and capricious decision by expelling him from school.

## IX.    Past Discrimination and Injustices at Riverdale Country School

131. In a series of cases dating back to the 1970s, there is wealth of jurisprudence in which courts rely on the enactment of 42. U.S.C. § 1981, not only to desegregate private schools, but to also protect private school children from unequal treatment, discipline, and or/benefits based on a protected classes such as ethnicity and gender.

132. Defendant Riverdale Country School's demographic is far less diverse than its private

school counterparts in Bronx – Horace Mann and Fieldston.

133. In 2013, Defendant Riverdale Country School was sued for "espousing a sham 'diversity' program that actually only sought to enroll full-paying Asians..." *School on Trial*, New York Post, June 17, 2013.

134. Attorney Ed Hayes representing Riverdale's former Headmaster - Mr. Hendon-Brown, noted in a reference to Defendant Riverdale Country School, "there's just one problem with that place," he said "They discriminate!" *Id*

135. Defendant Riverdale Country School has a reputation for having an ethos of appearing liberal but in reality upholding the status quo in terms of racial and gender privilege.

136. Defendant Riverdale Country School's policy "prohibits any and all forms of discriminatory practices, including but not limited to, harassment based on...any other category protected by law." *See Handbook* at 15. (emphasis added).

137. Although public school students have stronger protections from expulsion than those afforded to private school students, the fact that Defendant Riverdale Country School's policy claims to protect students from harassment or discrimination based on all categories protected under law binds Defendant Riverdale Country School with the protections afforded for public school students.

138. While anti-bullying statutes apply to public schools, courts have in fact stretched anti-bullying laws to private school students when possible. *See Jacques G. Simon v. Bellmore-Merrick*, 39 N.Y. 2d 167 [1976].

139. The public policy trend to bind private schools to anti-bullying statutes has strengthened in recent years. The New York legislative body is currently in the process of expanding New York anti-bullying laws to include private schools. *See New York Bill S.6438-*

*Hoylman/A.7738-O'Donnell.*

## X.    Two Tiered Disciplinary System

140. Defendant Riverdale Country School has established a two-tiered justice system in which students from wealthy families are not disciplined for violating school policy but students on scholarship and/or minority students are severely punished when they are even perceived to violate any school policies.

141. There is one set of rules for the children whose parents are on the board and/or donate large sums of money, and another for students on financial aid and/or minority students.

142. Students have reported having seen certain board member's children taking drugs in the hallway, known as "juuling" in gym class, continuously skipping class on test days, and showing up late to class. This apparently goes on with the knowledge and consent of Riverdale Country School staff and faculty.

143. 

144. The student body mock's Riverdale Country School's social media account by highlighting the "two tiered justice system at Riverdale."

145. Riverdale Country School students refer to a "D.A.A.R. starter pack" on social media which mock's the school's position of: "We can't suspend him, his mother is on the board!"

146. This case is yet another example of Defendant Riverdale Country School's unequal

justice system unjustly disciplining one student because his family is not a wealthy donor of the school.

147. Plaintiff John Doe is primarily raised by his single-mother in New York City. Plaintiffs ███████████████████ pay for Plaintiff John Doe's education in full but work hard and struggle to provide such an education and are not donors or on the board of trustees for Riverdale Country School.

148. Furthermore, Plaintiff John Doe █████████████ and as such is an ethnic minority at Riverdale Country School.

149. ████████████████████████████████████████████████
████████████████████████████████ Given that Defendant Owens is extremely influential in the private school arena, including at Riverdale Country School, ██████████████████████████████████████

150. When Defendant Owens reported that ████████████████████████ ████████████████████████ to Defendant Riverdale Country School, the school immediately acted on the allegations on the strength of Defendant Owens influence and power.

151. Plaintiff John Doe does not have a wealthy parent or influential donor to protect his interests at Riverdale Country School, so Defendant Riverdale Country School had no reservations to ████████████████████ dispose of him.

152. To make matters worse, because Defendant Owens has such a strong influence with all of the top New York City private school, Plaintiff John Doe cannot easily transfer to another private high school because she has ████████████████ and managed to get him expelled from Riverdale Country School.

153. Plaintiff John Doe must prevail in this action because if he does not, he will unfairly be ███████████ and will not be able to attend a comparable private high school in New York City.

## XI.     Arbitrary and Capricious Decision

154. In the initial meeting that Mr. Sipp along and Defendants Choi and Nicholson-Flynn held with Plaintiff John Doe and Plaintiff ███████, the school officials stated that there were serious allegations made against Plaintiff John Doe but refused to provide much detail beyond that.

155. It wasn't until Plaintiff ████████ spoke with the detective from the NYPD who was investigating the matter, per the school's referral of the matter, that Plaintiffs John Doe and ████████ became aware of the extent and nature of the allegations made against Plaintiff John Doe.

156. Defendant Torres provided a statement to the NYPD alleging that ███████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████████
███████████████████████ *See* ██████████████ Ex. A

157. Defendant Owens also provided a statement to the NYPD alleging that: ██████████



*See* ███████████████ Ex. B.

158. The NYPD interviewed ██████████████ on October 28, 2017 to which ████████ █████ stated that: ██████████████████████████████████

159. Defendant Jane Doe made it clear to the detective and memorialized her statement in writing, with the presence of her mother, that ████████████████████████ ████████████████

160. The NYPD subsequently closed the case and concluded that the allegations against Plaintiff John Doe were unfounded.

161. Rather than terminate the school's case, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres continued to prosecute Plaintiff John Doe for the fabricated allegations stating that Plaintiff John Doe sexually harassed Defendant Jane Doe, despite her statement otherwise.

162. Plaintiff John Doe refuted these allegations. Plaintiffs' counsel submitted ample evidence to Defendants Riverdale Country School and its employees, ████████████ Randolph, Nicholson-Flynn, Choi, and Torres demonstrating Plaintiff John Doe's innocence and that Defendant Jane Doe was in fact culpable of sexually harassing Plaintiff John Doe but the School refused to review it.

163. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres made the decision to expel Plaintiff John Doe on the alleged basis that ████████████████████████████████████

164. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres ignored the policies and procedures clearly outlined in the Handbook because: (1) Plaintiff John Doe was never provided a full and fair investigation; (2) they ignored the relevant evidence including, the NYPD police report, the letters from Plaintiff John Doe's friends and their parents attesting to the consensual nature of Plaintiff John Doe and Jane Doe's relationship; (3) they refused to investigate the allegations Plaintiff John Doe made against Defendant Jane Doe regarding the acts of sexual harassment committed against him (4) Refused to review and acknowledge that ████████████████████████████████████████████████████

165. The evidence in this matter overwhelmingly proves that Plaintiff John Doe did not violate the rights or harass Defendant Jane Doe.

166. Defendant Riverdale Country School and its employees' decision to expel Plaintiff John Doe have no factual or logical basis. The decision was arbitrary and capricious and a violation of Plaintiff John Doe and Plaintiff ███████████████ rights.


**COUNT ONE**
**Violation Title IX of the Education Amendments of 1972**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

167. The allegations set forth in paragraphs 1-166 are repeated and incorporated as if fully set forth herein.

168. Title IX of the Education Amendments of 1972 states, in relevant part, that:

No person in the United States Shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

33

169. Title IX of the Education Amendments of 1972 is a comprehensive law and is applicable to an entire educational institution if any segment of the school receives federal funds.

170. Defendant Riverdale Country School has received federal grants and funding on several occasions. See Exs. OO-QQ.

171. The Department of Education as well as the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and public grievance procedures providing for the prompt and equitable resolution of student…complaints alleging any action which would be prohibited by" Title IX or regulations under. 34 C.F.R. § 106.8(b) (Dep't of Education); 28 C.F.R. § 54.135(b) (Dep't of Justice).

172. Such prohibited actions include all forms of sexual harassment, ███████████████ ███████████████████████████ See U.S. Dep't of Education, Office for Civil Rights, *Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties – Title IX* (2001) at 19-20, 21 & nn. 98-101.

173. Moreover, the procedures and standards adopted by a school subject to Title IX must not only "ensure the Title IX rights of the complainant," but must also "accord due process to both parties involved…" *Id* at 22.

174. A school covered by Title IX has an obligation to ensure that all employees involved in the procedural process have "adequate training as to what conduct constitutes sexual harassment, ██████████████████████████" *Id.* at 21.

175. Defendants Riverdale Country School, Randolph, Nicholson-Flynn, Choi, and Torres jointly and severally violated Title IX by intentionally discriminating against Plaintiff John Doe on the basis of his gender by knowingly ████████████████████

████████████████████████ Despite the fact that the NYPD conducted a full investigation on the allegations against Plaintiff John Doe and concluded that the allegations were baseless, Defendants Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres not only failed to close their internal investigation against Plaintiff John Doe, but they maliciously engaged in gender based harassment.

176. Defendants Riverdale Country School, Randolph, Nicholson-Flynn, Choi, and Torres actions to continue to prosecute, intimidate, and harass Plaintiff John Doe after the NYPD had cleared him of the false allegations were deliberate and malicious. By removing Plaintiff John Doe from school on the erroneous grounds of fabricated ██████ ████████████ Defendants Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres jointly and severally denied Plaintiff John Doe equal access to Riverdale Country School's resources and opportunities, thereby preventing him from his right to education pursuant the contract between Defendant Riverdale Country School and Plaintiffs.

177. Plaintiff John Doe suffered from student-on-student gender based harassment and misconduct from Defendant Jane Doe through gender based harassment and defamation by falsely alleging that ████████████████████

178. ██████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████ Defendants Riverdale Country School and its employees, ████████ Randolph, Nicholson-Flynn, Choi, and Torres failed to even investigate these allegations

let alone reprimand Defendant Jane Doe for her sexual harassment.

179. Plaintiffs provided ample evidence supporting the assertion that Plaintiff John Doe suffered sexual harassment from Defendant Jane Doe, but Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres ignored his claims.

180. Defendants Riverdale Country School and its employees Defendant Randolph, Nicholson-Flynn, Choi, and Torres actions to ignore Plaintiff John Doe's allegations of sexual harassment against Defendant Jane Doe while at the same time punish Plaintiff John Doe for sexual allegations made by Defendant Jane Doe, even after the NYPD cleared him of said allegations, shows the severity of gender based discrimination that Defendants engaged in.

181. Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres engaged in deliberate and malicious gender based discrimination against Plaintiff John Doe by removing Plaintiff John Doe from school due to false allegations ███████████ without conducting a full and fair investigation.

182. Defendants Riverdale Country School, Randolph, Nicholson-Flynn, Choi further discriminated against Plaintiff John Doe based on his male sex gender when they invited him and Plaintiff ████████ into a meeting on November 6th and proceeded to again bring up false allegations against him and while claiming that they would not address ███ ████████ Defendants Randolph, Nicholson-Flynn, and Choi pressured Plaintiff John Doe to admit to the consensual conduct he engaged with Defendant Jane Doe then and claimed that he sexually harassed Defendant Jane Doe based on that admission. Defendants Randolph, Nicholson-Flynn, and Choi disregarded the fact that Plaintiff John

Doe and Defendant Jane Doe's interactions were always consensual. Defendants
Riverdale Country School through its employees, Defendants Randolph, Nicholson-
Flynn, and Choi purposely and maliciously misconstrued Plaintiff John Doe and
Defendant Jane Doe's consensual interactions in order to expel Plaintiff John Doe.

183. Moreover, Defendant Nicholson-Flynn injected her cultural bias towards ███████
people by condescendingly telling Plaintiff ███████ and Plaintiff John Doe that ███████


184. Defendant Choi further discriminated against Plaintiff John Doe at the meeting by taking
the position that since he was the boy, he must have been the sexual aggressor. The
flawed and discriminatory belief that because Plaintiff John Doe was a boy and
Defendant Jane Doe was a girl, he must have been the sexual aggressor was the driving
force behind the unlawful actions that Defendants Riverdale Country School and its
employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres took against
Plaintiffs.

185. In addition to ignoring the NYPD's report clearing Plaintiff John Doe from ███████
███████ Defendants Riverdale Country School and its
employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres ignored ample
evidence submitted by Plaintiffs' counsel which included, letters from witnesses stating
that Plaintiff John Doe and Defendant Jane Doe's relationship was consensual.

186. Defendant Riverdale Country School and its employees, Defendants Randolph,
Nicholson-Flynn, Choi, and Torres also ignored ███████


███████████████

187. Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres continued to discriminate against Plaintiff John Doe by refusing to reinstate him back to Riverdale Country School and by ████████ ███████████████████████████████████████████████ ███████████████████████████

188. As a result of Defendant Riverdale Country School's sanctioned gender based harassment and gender based discrimination, Plaintiff John Doe was denied his right to education, suffered extreme emotional distress, and his reputation has been irreparably harmed.

189. As a result of the foregoing, Plaintiffs are entitled to damages for past acts of gender based harassment and defamation in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT TWO
### Violation of 42 U.S. Code § 1983 – Civil Action for Deprivation of Rights
### (As to Defendants Owens, Riverdale Country School, Dominic A.A. Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)

190. The allegations set forth in paragraphs 1-189 are repeated and incorporated as if fully set forth herein.

191. 42 U.S. Code § 1983 declares that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities

38

secured by the Constitution and laws, shall be liable to the party injured in an

action at law, suit in equity, or other proper proceeding for redress, except that in

any action brought against a judicial officer for an act or omission taken in such

officer's judicial capacity, injunctive relief shall not be granted unless a

declaratory decree was violated or declaratory relief was unavailable.

192. Defendant Riverdale Country School's Handbook gives school officials the color of

authority when protecting the rights of students or undertaking disciplinary measures:

- "Riverdale prohibits any and all forms of discriminatory practices….and any other category protected by law." *Handbook* at 15.

- "The School, however, has a legal obligation to act on all information it receives if it believes an individual may be engaging in wrongful conduct or violating the law." *Id* at 17.

- "If the School's investigation determines that ███████████ occurred, and if there is reason to suspect that ██████████████████ constitutes a criminal act, the Head of the School or the Chair of the Board of Trustees shall immediately report this determination to the appropriate law enforcement authorities, which shall include the New York City Police Department and the Bronx County District Attorney." *Id* at 19.

193. Defendant Owens and Defendant Riverdale Country School and its employees,

Defendants Randolph, Nicholson-Flynn, Choi, and Torres were acting under the color of

law when they made a false report to the NYPD stating that ██████████████████

██████████████████████ Defendants Riverdale Country School and █

employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres did not conduct a

full and fair hearing before alerting the NYPD of these false allegations.

194. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres knew or should of know the allegations were false before making such a serious allegation to the NYPD. By reporting fabricated allegations ███████████████████████████████████████████████████ ████████████████████████ Defendant Owens and Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres violated Plaintiff John Doe's constitutionally and statutorily protected civil rights by subjecting him to discrimination based on his gender and ethnic background.

195. Moreover, after the NYPD conducted a full and fair investigation and concluded that the allegations against Plaintiff John Doe were unfounded, Defendant Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres continued to harass and violate Plaintiff John Doe's right to be free from discrimination by expelling John Doe based on the false allegations.

196. Defendant Owens and Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres constitutional abuses and violations were directly and proximately caused by discriminatory views that ████████ ███████████████████████████████████████████████████ ████████████████████████████████████

197. Defendants' collective and individual actions consisting of false allegations that ████████ ████████████████████████████████ led to Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres further violating Plaintiffs constitutionally protected fundamental rights by expelling him

due to fabricated allegations that █████████████████████████

198. As a result of the foregoing, Plaintiffs are entitled to damages for past acts of gender based harassment, discrimination based on gender and ethnic background in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**COUNT THREE**
**Violation of New York Executive Law Section 296(4)**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

199. The allegations set forth in paragraphs 1-199 are repeated and incorporated as if fully set forth herein.

200. New York Executive Law, Article 15, Human Rights Law, section 296(4) states in relevant part:

> It shall be an unlawful discriminatory practice for an education corporation or association…to permit the harassment of any student or applicant by reason of his race, color, religion, disability, national origin, sexual orientation, military status, sex, age, or marital status.

201. Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres, violated New York Executive Law, Article 15, Human Rights Law, section 296(4), by intentionally and purposely discriminating against Plaintiff John Doe on the basis of his male sex gender by: ████████████████

████████████ (2) notifying the NYPD of the allegations yet failing to accept the police department's findings that Plaintiff John Doe did not ████████████████████

████ (3) operating under an unjust and irrational belief that because Plaintiff John Doe is

a male and Defendant Jane Doe is a female, Plaintiff John Doe must be the offender even

though evidence showed otherwise; (4) fabricating false ████████████████████

████████████████████████████████████████████████████████

████████████████████████ (5) telling Plaintiff John Doe and Plaintiff ████████ that

████████ forms of expression are not acceptable in the U.S; (6) unlawfully expelling him

from school and thereby denying Plaintiff John his right to education while refusing to

discipline Defendant Jane Doe for her acts of sexual harassment and gender based

misconduct against Plaintiff John Doe; and (7) defaming Plaintiff John Doe's character

by expelling him from school on false allegations of sexual harassment.

202. As a result of the foregoing, Plaintiffs are entitled to damages for past acts of gender

based harassment, discrimination based on gender and ethnic background in an amount to

be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

### COUNT FOUR
**Violation of New York Civil Rights Law Section 40-C**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

203. The allegations set forth in paragraphs 1-202 are repeated and incorporated as if fully set

forth herein.

204. New York Civil Rights Law section 40-c provides:

1. All persons within the jurisdiction of this state shall be entitled to the equal

   protection of the laws of this state or any subdivision thereof.

2. No person shall, because of race, creed, color, national origin, sex, marital status,

   sexual orientation or disability, as such term is defined in section two hundred

ninety-two of the executive law, be subjected to any discrimination in his or her

civil rights, or to any harassment, as defined in section 240.25 of the penal law, in

the exercise thereof, by any other person or by any firm, corporation or institution,

or by the state or any agency or subdivision of the state.

205. Defendant Riverdale Country School and its employees, Defendants Randolph,

Nicholson-Flynn, and Choi, and Torres, in violation of New York Civil Rights Law

section 40-c, intentionally and purposely discriminated against Plaintiff John Doe on the

basis of his male sex gender by: (1) falsely accusing Plaintiff John Doe ████████

████████████████████ (2) notifying the NYPD of the allegations yet failing to

accept the police department's findings that ██████████████████████████

██████████████ (3) operating under an unjust and irrational belief that because

Plaintiff John Doe is a male and Defendant Jane Doe is a female, Plaintiff John Doe must

be the offender even though evidence showed otherwise; (4) fabricating false ██████

████████████████████████████████████████████████████████

████████████████████████████████ (5) telling Plaintiff John Doe and

Plaintiff ██████ that ██████ forms of expression are not acceptable in the U.S; (6)

unlawfully expelling him from school and thereby denying Plaintiff John his right to

education while refusing to discipline Defendant Jane Doe for her acts of sexual

harassment and gender based misconduct against Plaintiff John Doe; and (7) defaming

Plaintiff John Doe's character by expelling him from school on false allegations of sexual

harassment.

206. As a result of the foregoing, Plaintiffs are entitled to damages for past acts of gender

based harassment, discrimination based on gender and ethnic background in an amount to

be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT FIVE
**Breach of Contract**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

207. The allegations set forth in paragraphs 1-206 are repeated and incorporated as if fully set forth herein.

208. Based on the aforementioned facts and circumstances, Defendant Riverdale Country School, by and through Defendants Randolph, Nicholson-Flynn, Choi, and Torres, breached express and/or implied agreement(s) with Plaintiffs.

209. Plaintiffs entered into a contract with Defendant Riverdale Country School on February 14, 2017 for the academic year of 2017-2018, for the costs of $52,050. Plaintiffs paid the deposit of $7,500 and the tuition pursuant to the timeline of payments per the contract.

210. By entering into an expressed contract with Plaintiffs, Defendant Riverdale Country School agreed to conduct business pursuant to the policies and procedures outlined in the Riverdale Country School Family Handbook.

211. Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres committed several breaches of its agreement with Plaintiffs, including, without limitation:

- "The School seeks diversity in its faculty, staff, and student body. In admissions and employment policies and practices, in financial aid and loan programs, and in all its educational programs, Riverdale does not discriminate on the basis of sex, race, color, religion, ethnic origin, or sexual orientation." *Handbook* at cover

44

page.

- "The school is a community of individuals who have diverse beliefs, feelings, and habits. It thrives in direct relation to the concern of individual members for each other and for the community itself. The school has a responsibility to provide for all its members a healthy environment in which to live and work. The individual members have a responsibility to uphold the rules of the school." *Handbook* at 14.

- "Riverdale prohibits any and all forms of discriminatory practices, including but not limited to harassment based on race, color, religion, sex, gender, gender identity or expression, sexual orientation, age, national origin, marital status, disability, military status or any other category protected by law." *Handbook* at 15.

- "No student shall be subjected to harassment/bullying by employees, other students, or other adults." *Id.*

- "Acts of harassment and bullying shall include, but not be limited to, those acts based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex. Prohibited conduct includes but is not limited to: epithets, slurs, jokes or negative stereotyping that relate to any of the categories above." *Id.*

- "Harassment/bullying includes sexual harassment. Sexual harassment may include unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of sexual nature." *Id* at 16.

- "The School will take prompt, reasonable action to prevent, investigate, and remedy harassment/bullying." *Id* at 16.

45

- "Upon receipt of a complaint of harassment/bullying, the School will promptly
  investigate the complaint. The investigation may include interviews of the
  complainant, the alleged offender, and other. It may also include other methods,
  such as utilizing outside counsel or an independently appointed investigation firm.
  In addition, other investigation measures, including but not limited to, viewing
  emails, text messages, photographs, and social media pages or apps may be
  employed. The school will try to be as discreet as possible during an investigation
  and confidentiality will be maintained to the extent possible given the facts and
  circumstances of the complaint and the need to do a fair and thorough
  investigation." *Id.* at 17.

212. Defendant Riverdale Country School and its employees, Defendant Randolph,
   Nicholson-Flynn, Choi, and Torres breached the contract with Plaintiffs by: (1) falsely
   accusing Plaintiff John Doe of ███████████████████████ (2) notifying the
   NYPD of the allegations yet failing to accept the police department's findings that
   Plaintiff John Doe did not ███████████████████ (3) operating under an
   unjust and irrational belief that because Plaintiff John Doe is a male and Defendant Jane
   Doe is a female, Plaintiff John Doe must be the offender even though evidence showed
   otherwise; (4) ████████████████████████████████████
   ██████████████████████████████████████████████
   (5) telling Plaintiff John Doe and Plaintiff ████████ that ████████ forms of expression are
   not acceptable in the U.S; (6) unlawfully expelling him from school and thereby denying
   Plaintiff John his right to education while refusing to discipline Defendant Jane Doe for
   her acts of sexual harassment and gender based misconduct against Plaintiff John Doe;

and (7) defaming Plaintiff John Doe's character by expelling him from school on false

allegations of sexual harassment.

213. As a direct and foreseeable consequence of these breaches, Plaintiffs sustained

tremendous damages, including, without limitation, emotional distress, loss of

educational and athletic opportunities, economic injuries and other direct consequential

damages.

214. Plaintiffs are entitled to recover damages for Defendant Riverdale Country School's

breach of the express and/or implied contractual obligations described above.

215. As a direct and proximate result of the above conduct, actions, and inactions, Plaintiffs

have suffered physical, psychological, emotional and reputational damages, economic

injuries and the loss of educational and athletic opportunities.

216. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.


### COUNT SIX
**Breach of Covenant of Good Faith and Fair Dealing**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

217. The allegations set forth in paragraphs 1-216 are repeated and incorporated as if fully set

forth herein.

218. Based on the aforementioned facts and circumstances, Defendant Riverdale Country

School, by and through Defendants Randolph, Nicholson-Flynn, Choi, and Torres,

violated the covenant of good faith and fair dealing in the agreement(s) with Plaintiffs by

discriminating against Plaintiff John Doe on the basis of gender and ethnic background

by falsely accusing him of ██████████ and demeaning his ████████ culture.

219. Defendants Riverdale Country School and its employees Defendants Randolph, Nicholson-Flynn, Choi, and Torres further violated the covenant of good faith and fair dealing implied in the agreement(s) by expelling Plaintiff John Doe, without providing him a fair and full investigation, from Riverdale Country School, notwithstanding the NYPD police report and additional evidence Plaintiff's counsel submitted to the school which together conclusively proved that the allegations made against Plaintiff John Doe were wholly fabricated.

220. As a direct and foreseeable consequence to these breaches, Plaintiffs sustained tremendous damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

221. Plaintiffs are entitled to recover damages for Defendant Riverdale Country School's breach of express and/or implied contractual obligations described above.

222. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT SEVEN
### Violation of New York Business Law § 349(a) - Unfair or Deceptive Trade Practices
### (As to Defendant Riverdale Country School, Dominic A.A. Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)

223. The allegations set forth in paragraphs 1-222 are repeated and incorporated as if fully set forth herein.

224. New York General Business Law, Section 349(a), provides consumer protection by

declaring as unlawful "deceptive acts and practices in the conduct of any business, trade or commerce or in furnishing any service in this state."

225. Defendant Riverdale Country School's Handbook states:

- "The school is a community of individuals who have diverse beliefs, feelings, and habits. It thrives in direct relation to the concern of individual members for each other and for the community itself. The school has a responsibility to provide for all its members a healthy environment in which to live and work." *Id.* at 14.

- "Riverdale prohibits any and all forms of discriminatory practices, including but not limited to harassment based on race, color, religion, sex, gender, gender identity or expression, sexual orientation, age, national origin, marital status, disability, military status or any other category protected by law." *Id.* at 15.

- "No student shall be subjected to harassment/bullying by employees, other students, or other adults." *Id.*

- "Acts of harassment and bullying shall include, but not be limited to, those acts based on a person's actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex. Prohibited conduct includes but is not limited to: epithets, slurs, jokes or negative stereotyping that relate to any of the categories above." *Id.*

- "The School will take prompt, reasonable action to prevent, investigate, and remedy harassment/bullying." *Id* at 16.

- "Upon receipt of a complaint of harassment/bullying, the School will promptly investigate the complaint. The investigation may include interviews of the complainant, the alleged offender, and other. It may also include other methods,

such as utilizing outside counsel or an independently appointed investigation firm. In addition, other investigation measures, including but not limited to, viewing emails, text messages, photographs, and social media pages or apps may be employed. The school will try to be as discreet as possible during an investigation and confidentiality will be maintained to the extent possible given the facts and circumstances of the complaint and the need to do a fair and thorough investigation." *Id.* at 17.

226. Defendant Riverdale Country School, by and through, Defendants Randolph, Nicholson-Flynn, Choi, and Torres have engaged in the following acts or practices, that are deceptive or misleading, or committed deceptive acts or practices, which were aimed at the consumer public at large, that were a representation or omission likely to mislead a reasonable consumer acting reasonable under the circumstances:

1. By causing Plaintiffs to reasonably believe that Defendant Riverdale Country School would follow its own policies, and procedures, of which copies were provided to Plaintiffs and are available on Defendant Riverdale Country School's website; and

2. By causing Plaintiffs to believe that if they paid tuition and fees to Defendant Riverdale Country School, that Defendant Riverdale Country School and its employees including, but not limited to, Defendants Randolph, Nicholson-Flynn, Choi, and Torres, would uphold its obligations, covenants and warranties to Plaintiffs described in its policies.

227. Defendants Riverdale Country School, through its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres had no intention of following Defendant Riverdale

Country School's policies and procedures when they intentionally pursued fabricated

███████████ allegations against Plaintiff John Doe to the point where they reached an

arbitrary and capricious decision of unlawfully expelling Plaintiff John Doe.

228. Defendant Riverdale Country School stated mission together with its policies and

procedures lead a reasonable person to believe that the school fosters a diverse learning

environment with no tolerance for discrimination and harassment, and in the event that a

student experiences harassment or discrimination, the school will take swift yet fair and

balanced action to remedy the situation. However, Defendant Riverdale Country School

together with Defendants Randolph, Nicholson-Flynn, Choi, and Torres circumvented the

policies and procedures of Riverdale Country School by harassing and discriminating

against Plaintiff John Doe on the basis of his male gender and ethnic background and

then reached an arbitrary and capricious decision of wrongfully expelling him.

229. Based on the foregoing facts and circumstances, Defendant Riverdale Country School

and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres engaged in

unfair or deceptive trade practices in violation of Section 349(ca) of the New York

General Business Law.

230. As a result of Defendant Riverdale Country School and its employees, Defendants

Randolph, Nicholson-Flynn, Choi, and Torres, Plaintiffs sustained tremendous damages

including, without limitation, emotional distress, psychological damages, loss of

educational and athletic opportunities, economic injuries and other direct and

consequential damages.

231. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

**COUNT EIGHT**
**Estoppel and Reliance**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

232. The allegations set forth in paragraphs 1-231 are repeated and incorporated as if fully set forth herein.

233. Defendant Riverdale Country School's various policies constitute representations and promises that Defendant Riverdale Country School, and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres should have reasonably expected to induce action or forbearance by Plaintiffs.

234. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres expected or should have expected Plaintiffs to accept its offer of admission, incur tuition and fees expense, and choose not to attend another high school based on its express and implied promises that Defendant Riverdale Country School would not tolerate, and Plaintiff John Doe would not suffer, gender based harassment and discrimination and ethnic discrimination by other students or employees of Defendant Riverdale Country School.

235. On the contrary, Defendant Riverdale Country School, by and through its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres harassed and discriminated Plaintiff John Doe on the basis of his gender and ethnic background by: (1) falsely accusing Plaintiff John Doe of ████████████████████ (2) notifying the NYPD of the allegations yet failing to accept the police department's findings that Plaintiff John Doe did not ███████████████ (3) operating under an

unjust and irrational belief that because Plaintiff John Doe is a male and Defendant Jane
Doe is a female, Plaintiff John Doe must be the offender even though evidence showed
otherwise; (4) fabricating false ██████████████ against Plaintiff John in order to
uphold their discriminatory view that he was the guilty party simply because he is a male;
(5) telling Plaintiff John Doe and Plaintiff ████████ that ████████ forms of expression are
not acceptable in the U.S; (6) unlawfully expelling him from school and thereby denying
Plaintiff John his right to education while refusing to discipline Defendant Jane Doe for
her acts of sexual harassment and gender based misconduct against Plaintiff John Doe;
and (7) defaming Plaintiff John Doe's character by expelling him from school on false
allegations of sexual harassment.

236. Plaintiffs relied to their detriment on these express and implied promises and
representations made by Defendant Riverdale Country School and its employees,
Defendants Randolph, Nicholson-Flynn, Choi, and Torres.

237. Based on the foregoing, Defendant Riverdale Country School and its employees,
Defendants Randolph, Nicholson-Flynn, Choi, and Torres are liable to Plaintiffs based on
the legal claim of estoppel.

238. As a direct and proximate result of the above conduct, Plaintiffs sustained substantial
damages, including, without limitation, emotional distress, psychological damages, loss
of educational and athletic opportunities, economic injuries and other direct and
consequential damages.

239. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be
determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and
disbursements.

**COUNT NINE**
**Tortious Inducement of Breach of Contract**
**(As to Defendants Michele Owens, Julie Choi, and Jane Doe)**

240. The allegations set forth in paragraphs 1-239 are repeated and incorporated as if fully set forth herein.

241. The elements of Tortious Inducement of Breach of Contract constitute:(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; (4) damages to plaintiff. *See Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90 (N.Y. 1990).

242. Plaintiffs and Defendant Riverdale Country School possessed a valid contract when Defendants Owens, Choi, and Jane Doe induced breach of contract.

243. Defendant Owens had knowledge of the contract between Plaintiffs and Defendant Riverdale Country School because she is a licensed clinical psychologist who refers numerous students to Defendant Riverdale Country School as part of her non-profit organization. As such she knew or should have known that Plaintiff John Doe has a contract with Defendant Riverdale Country School similar to how Defendant Jane Doe has a contract with Riverdale Country School because signing a contract with Riverdale Country School is required in order to attend the school. Defendant Owens intentionally induced Defendant Riverdale Country School to breach their contract with Plaintiffs when ████████████████████████████████████████████ ██ Due to Defendant Owen's unlawful inducement of breach of contract, Plaintiffs have suffered psychological damages, loss of educational and athletic opportunities, economic injuries, and other direct and consequential damages.

244. Defendant Choi had knowledge of Plaintiffs' contract with Riverdale Country School given that she is an employee of Riverdale Country School and is therefore aware of the policies and procedures of the school, namely that each student maintains a contractual agreement with the Riverdale Country School. Defendant Choi intentionally induced Defendant Riverdale Country School to breach the contract when she held a private meeting with Plaintiff John Doe and heavily pressured him to admit to ███████████ ████████████████████████████████████████████████ After pressuring Plaintiff John Doe to admit to the specific incidents of conduct, Defendant Choi turned around and claimed that by admitting to that conduct Plaintiff John Doe had admitted to sexual harassment.  Plaintiff John Doe made it very clear that he did not admit to sexual harassment, what he admitted to was consensual contact with Defendant Jane Doe. Defendant Choi misconstrued Plaintiff John Doe's words and induced Defendant Riverdale Country School to breach its contract. Plaintiffs have suffered psychological damages, loss of educational and athletic opportunities, economic injuries, and other direct and consequential damages.

245. Defendant Jane Doe had knowledge of Plaintiffs' contract with Riverdale Country School as she is a student at Riverdale Country school and is therefore familiar with the policies and procedures of the school, namely that each student maintains a contractual agreement with the Riverdale Country School. Defendant Jane Doe intentionally induced Plaintiff John Doe to breach or otherwise render performance of the contract with Defendant Riverdale Country School when she allegedly reported that ███████████ ██████████████████████████████████ Due Defendant Jane Doe's unlawful inducement of breach of contract, Plaintiffs have suffered psychological

damages, loss of educational and athletic opportunities, economic injuries, and other direct and consequential damages.

246. Plaintiffs are entitled to recover damages for Defendants Owens, Choi, and Jane Doe's unlawful inducement of breach of contract breach between Plaintiffs and Defendant Riverdale Country School.

247. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT TEN
## Intentional Infliction of Emotional Distress
## (As to all Defendants)

248. The allegations set forth in paragraphs 1-247 are repeated and incorporated as if fully set forth herein.

249. Based on the foregoing facts and circumstances, Defendants each jointly and severally are liable for intentionally harassed and discriminated against Plaintiff John Doe on the basis of gender and ethnic background by fabricating false allegations that  The false allegations that Defendants fabricated were reported to the NYPD which investigated Plaintiff John Doe and found that he did not Despite the NYPD's finding that the allegations made against Plaintiff John Doe were unfounded, Defendants continued to prosecute Plaintiff John Doe for until Defendant Riverdale Country School through its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres unlawfully made an arbitrary and capricious decision to expel Plaintiff John

Doe from Riverdale Country School.

250. Defendant Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres caused extreme and undue emotional distress on Plaintiffs. Plaintiffs were shocked to their core when they heard the allegations. During the meetings with the school, Plaintiffs ███████ and John Doe's disbelief about the allegations was clearly evident by the fact that they were dismayed and crying.

251. Plaintiff John Doe has been seeing a therapist to deal with the pain of being accused of such horrible actions. Plaintiff John Doe has been unable to sleep at night and has been depressed because of the false allegations Defendants made against him.

252. Plaintiffs have been humiliated in their community as people have been speaking about the allegations made against Plaintiff John Doe. The entire ordeal has been extremely traumatic to Plaintiffs.

253. The above actions and inactions by Defendant Riverdale Country School were so egregious and utterly intolerable that they caused extreme mental anguish, severe psychological emotional distress to Plaintiffs, as well as financial loss, humiliation, loss of reputation, and other damages.

254. As a direct and proximate result of the above-mentioned conduct, Plaintiffs sustained substantial damages, including, without limitation, emotional distress, loss of educational and athletic opportunities, economic injuries, and other direct and consequential damages.

255. As a result of the foregoing, Plaintiffs is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expense, costs and disbursements.

**COUNT ELEVEN**
**Negligence**
**(As to Defendant Riverdale Country School, Dominic A.A.**
**Randolph, Kelley Nicholson-Flynn, Julie Choi, and Miguel Torres)**

256. The allegations set forth in paragraphs 1-255 are repeated and incorporated as if fully set forth herein.

257. Defendant Riverdale Country School and its employees Defendants Randolph, Nicholson-Flynn, Choi, and Torres owed a duty of care to Plaintiff John Doe as a high school student enrolled at Riverdale Country School. As faculty and staff at Riverdale Country School, a high school which is accredited by the New York State Association of Independent Schools, Defendants Randolph, Nicholson-Flynn, Choi, and Torres owed a duty of reasonable care to refrain from tortious acts against students as well as protect students from tortious acts by third parties.

258. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres breached its duties to Plaintiff John Doe by: (1) failing to follow the policies and procedures in the Handbook; (2)  failing to properly and thoroughly investigate the false allegations of ██████████████████ ████ (3) failing to close the investigation based on the NYPD's findings; (3) misconstruing and fabricating allegations against Plaintiff John Doe in order to expel him; (4) failing to accept the evidence from parents and friends of Plaintiff John Doe; and (5) making an arbitrary and capricious decision to expel Plaintiff John Doe without giving him due process and ignoring the overwhelming evidence in the record.

259. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres breach of their duty to properly provide due care to

Plaintiff John Doe and caused his unlawful expulsion. Defendants Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, Choi, and Torres negligently made a false report to the NYPD. When the NYPD concluded that the allegations made against Plaintiff John Doe were baseless, Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, and Choi continued to negligently pursue the fabricated allegations against Plaintiff John Doe. Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, and Choi negligently misconstrued Plaintiff John Doe's words and unjustly disciplined him by expelling him based on false allegations of sexually harassment. But for Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres failure to not fabricate false allegations against Plaintiff John Doe and to not properly investigate and review all the pertinent evidence proving the allegations against Plaintiff John Doe were wholly fabricated, Plaintiff John would not have been expelled from Riverdale Country School.

260. As a direct and proximate result of the Defendant Riverdale Country School and its employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres, Plaintiffs sustained substantial damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

261. As a result of the foregoing Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT TWELVE
### Defamation, Libel, and Slander
### (As to all Defendants)

262. The allegations set forth in paragraphs 1-261 are repeated and incorporated as if fully set forth herein.

263. Defamation as a rule is not actionable unless the plaintiff suffers special damages. However, the four established exceptions ("defamation per se" or "slander per se") consists of statements: (1) charging plaintiff with a serious crime; (2) statements which tend to injure another in his or her trade, business or profession; (3) that plaintiff has a loathsome disease; or (iv)imputing sexual misconduct. *See Liberman v. Gelstein*, 80 N.Y.2d 429 (N.Y. 1992).

264. The elements to common law defamation is: (1) a false statement purporting to be a fact; (2) publication or communication of that statement to a third person; (3) fault amounting to at least negligence; and (4) damages.

265. Defendants jointly and severally, and individually, defamed Plaintiff John Doe by knowingly, intentionally, willfully, and/or negligently communicating false allegations of ▮▮▮▮▮▮ about Plaintiff which they knew or should have known to be false or misleading.

266. Defendants reported that Plaintiff John Doe ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮ These allegations were false and damaging. The NYPD then conducted an investigation and concluded that the allegations against Plaintiff John Doe were baseless. Defendant Riverdale Country School and its employees, Defendant Randolph, Nicholson-Flynn, and Choi continued to communicate those false allegations against Plaintiff John Doe. Defendant Riverdale Country School through its employees,

eventually expelled Plaintiff John Doe by publishing a letter and sending it to Plaintiffs. The letter cited harassment as the cause of expulsion. Thus, Defendant Riverdale Country School and its employees continued to defame Plaintiffs even though there was overwhelming evidence proving that Plaintiff John Doe never sexually harassed, ███████████ Defendant Jane Doe.

267. Given that the false statements made by Defendants about Plaintiff John Doe charge Plaintiff John Doe with both: (1) a serious crime; and (2) impute ██████████ ███ damages are presumed.

268. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interests, attorneys' fees, expenses, costs and disbursements.

## COUNT THIRTEEN
### Abuse of Process
### (As to all Defendants)

269. The allegations set forth in paragraphs 1-268 are repeated and incorporated as if fully set forth herein.

270. Defendant Riverdale Country School was bound by the Handbook to provide due process to Plaintiffs:

- "The School, however, has a legal obligation to act on all information it receives if it believes an individual may be engaging in wrongful conduct or violating the law." *Id* at 17.

- "If the School's investigation determines that the alleged ███ occurred, and if there is reason to suspect that the alleged ████████████████

61

constitutes a criminal act, the Head of the School or the Chair of the Board

of Trustees shall immediately report this determination to the appropriate

law enforcement authorities, which shall include the New York City

Police Department and the Bronx County District Attorney." *Id* at 19.

271. ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ Rather than properly

investigate this serious allegation, Defendant Riverdale Country School and its

employees, Defendants Randolph, Nicholson-Flynn, Choi, and Torres acted in concert,

jointly and severally to report these false allegations to the NYPD.

272. The NYPD conducted a full investigation of the allegations made against Plaintiff John

Doe and concluded the allegations were unfounded.

273. Defendants rejected the NYPD's findings and proceeded to prosecute Plaintiff John Doe

on the fabricated allegations of ██████████████████ even though they had

knowledge that the allegations were baseless.

274. Defendant Riverdale Country School and its employees Defendant Randolph,

Nicholson-Flynn, Choi, and Torres failed to: (1) provide Plaintiff John Doe with a full

and fair investigation; (2) accept the findings from the NYPD that the allegations made

against Plaintiff John Doe were baseless; and (3) consider the additional evidence

Plaintiff John Doe submitted proving his interactions with Defendant Jane Doe have

always been consensual.

275. Based on the foregoing facts and circumstances, Defendants engaged the process of law

with the intent to harm Plaintiff John Doe without justification. The acts and conduct of

Defendants were the direct and proximate cause of injury and damage to Plaintiffs and violated their statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

276. As a direct and proximate result of the Defendants' gross abuse of process, Plaintiffs sustained substantial damages, including, without limitation, emotional distress, psychological damages, loss of educational and athletic opportunities, economic injuries and other direct and consequential damages.

277. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT FOURTEEN
**False Imprisonment**
**(As to Defendant Julie Choi)**

278. The allegations set forth in paragraphs 1-277 are repeated and incorporated as if fully set forth herein.

279. False imprisonment is the unlawful restraint of a person against their will by an individual who does not have the legal authority or justification to do so. The common law elements of false imprisonment consist of: (1) willful detention; (2) the detention must be without consent; (3) the detention is unlawful.

280. On or about October 27, 2017, Defendant Choi removed Plaintiff John Doe from his class, confiscated his cell phone against his will and over his explicit protest, and instructed that he could not contact or speak with anyone, and made him sit in the nurse's office. Plaintiff John Doe was not allowed to call his parents or speak to anyone else. He was instructed to sit still alone.

281. Defendant Choi's actions constitute false imprisonment as she did not have the legal authority to restrain Plaintiff John Doe without cause. Additionally, Defendant Choi did not give a reason for restraining Plaintiff John Doe nor did she allow him to make a single phone call.

282. As a direct and proximate result of the Defendant Choi's false imprisonment, Plaintiffs sustained substantial damages, including, without limitation, emotional distress, psychological damages, and other direct and consequential damages.

283. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

**COUNT FIFTEEN**
**Trespass to Chattels**
**(As to Defendant Julie Choi)**

284. The allegations set forth in paragraphs 1-283 are repeated and incorporated as if fully set forth herein.

285. Trespass to chattel is an intentional tort in common law that refers to a wrongful, intentional interference with the possession of a person's property.

286. Proving trespass to chattels involve the following elements: (1) the plaintiff owns or has right to possess the personal property at issue; (2) the tortfeasor intentionally interfered with the plaintiff's property; (3) the tortfeasor deprived the plaintiff of possession or use of the property at issue; and (4) the interference caused damages to the plaintiff.

287. On or about October 27, 2017, Defendant Choi removed Plaintiff John Doe from his class, confiscated his cell phone against his will and over his explicit protest, and instructed that he could not contact or speak with anyone, and made him sit in the nurse's

office.

288. By confiscating Plaintiff John Doe's phone over his explicit protest, Defendant Choi intentionally deprived Plaintiff John Doe of his personal property.

289. As a direct and proximate result of the Defendant Choi's, Plaintiffs sustained substantial damages, including, without limitation, emotional distress, psychological damages, and other direct and consequential damages.

290. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and disbursements.

## COUNT SIXTEEN
### New York Penal Law § 135.60 Coercion in the Second Degree
### (As to Defendants Randolph, Nicholson-Flynn, and Julie Choi)

291. The allegations set forth in paragraphs 1-290 are repeated and incorporated as if fully set forth herein.

292. Under New York Penal Law § 135.60 Coercion in the Second Degree is, in relevant part:

> A person is guilty of coercion in the second degree when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in, or to abstain from engaging in conduct in which he or she has a legal right to engage, or compels or induces a person to join a group, organization or criminal enterprise which such latter person has a right to abstain from joining, by means of instilling in him or her a fear that, if the demand is not complied with, the actor or another will: accuse some person of a crime or cause criminal charges to be instituted against him or her.

293. A penal statute may give rise to an implied private right of action where (1) plaintiff is a member of a class for whose particular benefit the statute was enacted; (2) recognition of a private right of action would promote the legislative purpose; and (3) creation of such a right of action would be consistent with legislative scheme. *See Niagara Mohawk Power Corp. v. Testone*, 272 A.D. 2d 910 (N.Y. App. Div. 2000).

294. On or about November 6, 2017, Defendants Randolph, Nicholson-Flynn and Choi held a meeting at Riverdale Country School with Plaintiff John Doe and Plaintiff ███ .

295. After the initial meeting, Defendant Choi met with Plaintiff John Doe privately in her office, without the presence of Plaintiff John Doe's mother, Plaintiff ███ In the private meeting, Defendant Choi coerced Plaintiff John Doe to admit to conduct between him and Defendant Jane Doe. Defendant Choi used the threat of severe disciplinary action to coerce Plaintiff John Doe to admit to the conduct the school officials had accused him of. Plaintiff John Doe was clear that the conduct was consensual, but Defendant Choi took Plaintiff John Doe's words out of context. Plaintiff John Doe was very clear that ████████████████████████ ████████████████████████

296. Defendants Randolph, Nicholson-Flynn, and Choi had a final meeting with Plaintiff John Doe and Plaintiff ███ and coerced Plaintiff John Doe to admit t███ ████████ Plaintiff John Doe admitted to touching Defendant Jane Doe consensually ████████ but he made it clear it was consensual. Defendant Randolph, Nicholson-Flynn. After getting Plaintiff John Doe to admit that ███ ████████ because they made it clear if he didn't admit to that he would be expelled, Defendants Randolph, Nicholson-Flynn, and Choi then proceeded to

misconstrue Plaintiff John Doe's words and claimed he sexually harassed Defendant Jane

Doe. This tactic of coercion and deception was improper and unlawful by Defendants

Randolph, Nicholson-Flynn, and Choi.

297. As a direct and proximate result of the Defendant Randolph, Nicholson-Flynn, and

Choi's coercion, Plaintiffs sustained substantial damages, including, without limitation,

emotional distress, psychological damages, loss of educational and athletic opportunities,

economic injuries and other direct and consequential damages.

298. As a result of the foregoing, Plaintiffs are entitled to damages in an amount to be

determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs and

disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs request the Court to grant the following relief:

A.  Enjoin Riverdale Country School's expulsion of Plaintiff John Doe;

B.  Order Riverdale to return Plaintiff John Doe to classes/Riverdale Country School forthwith;

C.  Order Riverdale Country School to provide Plaintiff John Doe one hour after school for the total the time he missed and provide access and instruction to work and assist him with catching up on his engineering project;

D.  Order Riverdale Country School to provide Plaintiff John Doe two months to catch up on any and all tests, homework, and current work in order to place him in the same position he was prior to being wrongfully excluded from school;

E.  Place a gag order on Riverdale Country School, its agents, employees, board members, staff, and affiliates from discussing any of the incidents regarding this matter involving Plaintiff John Doe;

F.  Order that any interaction that Plaintiff John Doe have with Defendants Randolph, Nicholson-Flynn, Choi, and Torres may be recorded for Plaintiff John Doe's protection from further retaliation;

G.  Compensatory damages;

H.  Punitive damages;

I.  As to all the causes of action, award Plaintiffs damages in the amount to be determined at trial, including, without limitation, attorneys' fees, expenses, costs and disbursement; and

J.  As to all the causes of action, award Plaintiffs damages in the amount to be determined at trial, including, without limitation, damages as to physical wellbeing, emotional and psychological damages, damages to reputation, past and future economic loss, loss of educational and athletic opportunities, loss of future university and career prospects,

K.  Grant other such relief as the Court may deem just and proper.

Dated: January 2, 2018

By:   /s/Julie A. Goldberg, Esq. ___
      JULIE A. GOLDBERG, ESQ.
      ABADIR BARRE, ESQ.
      RAFAEL URENA, ESQ.
      Goldberg & Associates
      5586 Broadway, Third Floor
      Bronx, NY 10463
      (718)432-1022 (phone)
      (718)432-1044(facsimile)
      *Attorney for Plaintiffs*